In re Howard, Brooke L. Bove, counsel for appellant Vincent Dwayne Howard, James R. Self, counsel for Appley, Ray Hodge and associates LLC. Ms. Bove, when you get settled, would you like to reserve time for a reply? Yes, your honor. How much? Five minutes, please. Five minutes. Five minutes it is. You may proceed. Thank you. Good morning. My name is Brooke Bove. I am here representing Vincent Howard. I do not have a lot to say that was not in our brief. So to save my voice and to save us time, I'm not going to go over too much. Obviously, I will answer any questions you've got the panel has. I do want to just kind of explain what I think the theme is here. And I think that it's a lack of foundation. This is where the bankruptcy court erred, in my opinion. There was not a foundational evidentiary basis for any of its rulings on standing, on whether or not there was fraud, on whether or not there was justifiable reliance. And part of that is because the evidence provided by the appellee was not sufficient on its own to establish justifiable reliance or standing. And I think that the bankruptcy court in its ruling also did not lay out a – it skipped some steps, some foundational steps in coming to its conclusions. I know that the bankruptcy court did find that Mr. Howard was not a credible witness. And obviously, the bankruptcy court is the trier of fact and allowed to make that conclusion. But I think even if you take away all of Mr. Howard's testimony, we're still left with a lack of foundational evidence to prove what RHA was trying to prove. They were the party bringing the case. They have the duty, therefore, to establish standing. They have the duty to establish evidence that supports their claims. But they had a contract. Correct. He admitted there was an agreement. Right. He admitted that they had a proof of claim that was filed, which he didn't object to, and that stated that they had a claim against him. In his answer to the adversary complaint, he admitted there was an agreement between RHA and himself. The only agreement that was in existence was the contract to loan money or to give him the $150,000. That was the only parties that were at issue. So I'm struggling with the concept that you say he didn't put on any evidence when your client admitted that those facts were all true. The truth is – so let me see if I can make this distinction. There's a difference between saying RHA is a party to the contract, to the agreement, is different than RHA is claiming that I owe them. Who else could have brought the action other than Ray Hodge or RHA? Just Ray Hodge. Okay. Ray Hodge is the sole owner of and managing operator of RHA? I believe so, but that's an alter ego issue. And all they had to do was have the real party in interest under Rule 17 bring the complaint, didn't they? If Ray Hodge was the real party in interest and he decided that RHA would be the named party, did he effectively ratify the transaction and allow the action to proceed in the name of RHA instead of Ray Hodge? But I think this is the problem. That's the foundational – No, I think the problem is that your client took the money and didn't pay it back and never made any attempt to do that. That's what we're struggling with. Did he make false representations? Yes. Right? I mean, were all the claims that were listed on Exhibit A to the agreement, were those in fact owned by his company? No. Right? I think some mistakes were made, but I don't think that amounts to fraud. But she didn't believe anything he had to say. She found him incredible, and she found him evasive, and she didn't believe his testimony. So his only defense was it was a mistake. It was accidental, and she didn't believe that. Okay. But – You know, as to the fraud, though, isn't a fraudulent omission of a material fact – doesn't that constitute a false representation? But that's – again, that's a fraudulent omission. It's not a – a mistake is different than a fraudulent omission. But that's a question of fact. Well, he knew that, for example, there was one of the causes of action or clients listed on there, a claim that he would have that was assigned, but he'd never signed an agreement with that party. That party was never his client, but he identified that person as his client. He knew that that person wasn't his client because he would have been a party to the engagement agreement, but there was never one made. I understand all that. So take – putting aside the incredibility of Mr. Howard, we're still left – But forget about his credibility, okay, whether that – but he admits, doesn't he, and it's not disputed at all that this one example I'm giving you is that he identifies, he says, I want to borrow money, and I'm giving you this collateral, this claim that I have based on this case that I own. But he knows that's not true because he didn't own that because that – that client never engaged him. Again, I would have to go back and check the record, but it's my understanding that, again, that that was a mistake and that was a thing filled out by someone in his office that he didn't know. So even if we accept all of that is true – What about that he had assigned some of these claims to another party? That wouldn't – you know, somebody in his office wouldn't have signed that. That was another thing. He's saying, I have all these claims, but he's assigned them to somebody else. And he knew about the CFP action, and he had a duty to disclose that. It wasn't somebody in his office that needed to disclose that. I mean, he contracted to reveal this information and to be honest, and the evidence – there's no evidence except his own testimony, which was rejected, and all the other evidence supported the fact that he didn't disclose it and he admitted he didn't disclose it, that he had assigned the claims to other parties, Verage, that were the ones that were listed on the exhibit. Those were all true facts, no dispute, unless you believed him, which the court didn't. I'm going to come back to what I put in our reply brief, which is that if we're – if the standard is justifiable reliance, if RHA justifiably relied on this, whether it's or not, it's a justifiable reliance, that has to be established by more than just Mr. Hodge's testimony. It has to be decided by an expert. It has to be explained what is – And under California law, is justifiable reliance a necessary element when the cause of action is based upon a fraudulent omission? I believe that's what the Field v. Mann's case says. And I believe that fraudulent omission is different than an actual representation. And when you fraudulently omit under California law, I'm not sure that the justifiable reliance requirement or causation are necessary. That's the law. But is that enough, Mr. – or Mr. Hodge's testimony, is that enough on its own, even if completely undisputed, is that enough to prove that he was justified in relying on it in his – as a lender, if he's the actual lender? Is it enough – is their foundation enough, an evidentiary foundation enough, to support that sort of finding, that his just – that his reliance was justifiable without doing any sort of checking on his own, without sort of doing any sort of – So he should have disbelieved – he should have disbelieved the contracting party? I think most people would ask for – would do more than just trust that an attorney is not going to lie, or that an attorney is not going to be completely forthcoming, or that, you know, there's got to be some sort of investigation, and Mr. Hodge admitted he did no investigation at all. And again, we don't know what the standard is because there's no expert that testified either way on this, and – But it's a fact question. It is a fact question, but California case law holds that – and this is something that Mr. Hodge's responding brief – industry standards for underwriting litigation finance loans are not something the court can just assume. We can't just assume what a lender should be doing or what is required for a lender in those situations. The case says understanding – or underwriting standards require expert testimony. If we're going to – if Mr. Hodge is going to establish that he just – he was justified in relying on this, then he has to offer an expert testimony that says that he was justified. It's not reasonable reliance. Unless there's not a representation, because I've omitted to tell you material information that I promised I would reveal to you if I was aware of it, and everything that was omitted were things that Mr. Howard knew. He admitted he knew. Again, and that's going to come back to that section that – about his – the requirements for his – for his disclosure requirements, that contract provision is vague, and that vagueness was not addressed by the bankruptcy court, and it was not addressed by Mr. Hodge or his counsel at the trial or in their briefing here. So, when there is an ambiguity on what's required and what is happening, then that ambiguity has to be construed against the drafting party, which in this case was the – was RHA, was Mr. Hodge. You now – a couple – about half a minute into your – Okay. I'll take – I'll save for reply. Thank you, Your Honors. Thank you. Good morning, Your Honors. I'm James Self. I represent Appellee Ray Hodge and Associates, LLC. Your Honor, Appellee submits the documentary evidence and testimony at trial of the witnesses that this matter completely supports the court's finding in favor of Appellee and the entry of the judgment in the amount that was, in fact, scheduled by Appellant in his schedules. And Appellee submits that the evidence supports the allegations of the complaint and the testimony of Appellee's manager, who, by the way, is Ryan Hodge. He's the son of Ray Hodge. The trial court issued a lengthy and detailed oral ruling setting forth the evidence supporting the judgment with findings that Appellant, as the court noted, was evasive and not credible. Counsel, on the evidence, could you go over for me, you know, what is the evidence that Mr. Hodge justifiably relied on Mr. Howard's representations? Mr. Hodge's testimony as to his reliance as the lender, he knew Mr. Howard. He was actually a friend of his. Mr. Howard is a well-known and well-regarded trial attorney in Orange County. He relied on the statements made by Mr. Howard, but he had no reason not to. And counsel for Appellant, I think, is trying to flip the issue, saying that it was up to Mr. Hodge and plaintiff to provide expert testimony as to reasonable reliance by a lender. In fact, it's the other way around. If Mr. Hodge, as the lender, testified, I relied on these statements, I knew Mr. Howard, I knew that his stature in the community, and I didn't need to do any more. What reliance, what more could he have done? Counsel suggests in her brief that he could have found this information out. This is completely contrary to what Field v. Mann says, which is the, I think the famous quote is that if I tell you I have no liens on my house and I rely on that to make you a loan, the fact that I could have gone across to the courthouse steps and found that there were loans, that doesn't mean it's not justifiable reliance. So the fact is, he testified that he justifiably relied on those representations, and I think he had a right to do so. I think the court clearly found that in her findings. The transcript that is attached to the excerpts of record make it quite clear this was a very detailed understanding by Judge Smith. She went through the facts, she went through the testimony, and she went through all the elements of 523A2, and she made a decision. There were numerous representations, as the court is aware, not only omissions, such as the $75 million CFPB lawsuit, the fact that his entire workers' compensation practice had been stolen right at the time the loan was made, that Mr. Howard was suing to get those cases back, which he never did, none of that was ever disclosed to Mr. Hodge. There were also intentional false representations, such as the representations of the cases listed and attached to the agreement, representations that he was going to use the funds and the loan proceeds for business expenses, when in fact it was clear from the bank statements that were introduced at trial that the funds were all used to pay his personal credit cards and personal expenses. Not only that, the fact that Mr. Howard continued these false representations well after the loan was made, after his firm had closed and he was now a full-time employee at another law PC was still active, he was sending out case status updates as recently, I think it was two months before the bankruptcy filing, saying still working, still doing discoveries, still trying to suss out a class size, discovery ongoing. There were no lawsuits. This was a complete fabrication, and this was designed to continue to... So Mr. Hodge would believe everything was moving well. If he had known the truth, he could have taken action before the bankruptcy was filed, he would have had his civil remedies that he could have resorted to. In fact, he learned all about this only when the bankruptcy was filed. I think the issue of standing was clearly addressed in the colloquy with counsel, the contract was with Ray Hodge and Associates LLC, and Vincent Howard, an individual, clearly Ray Hodge had the standing to file the lawsuit, they're a creditor, they hold a claim, they can bring an action for non-dischargeability. I have really nothing else to say, it's been fairly short, I'm happy to answer any questions the court may have. I don't have any other questions. Thank you so much. Thank you very much. Your Honor. All right. Reply. You have about four and a half minutes. Well, I don't think I need to take that, I think it's probably pretty clear where this is going. Again, I just don't think if you reread the court's ruling, I know it's very detailed, but I think it misses the foundational mark and it jumps to conclusions on contract, like considering the enforceability or the applicability or the ambiguities in the contract itself. If we're going to base the ruling on the contract, then we better understand clearly what the contract says, and I think the court jumps to conclusions on that without laying that foundation. I think the court also, in its comments on standing, made several conclusionary jumps as well and cherry-picked parts of the agreement to rely on and ignored other parts that would help describe, would help understand the standing issue. And I think that that lack of an expert, that Mr. Howard maybe should have brought an expert to, but the RHA was the party bringing the case. They have the duty to bring the evidence and to lay that foundation. All they brought was his own testimony, which says he relied on it, but that doesn't make his reliance justified under the law. So with that, I'll submit. Thank you very much. Thank you, Your Honors. All right. The case will be submitted. Thank you very much for your argument.
judges: Spraker, Gan, and Corbit